**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**MATTHEW RAUSENBERG,**

      **Petitioner,**

      **v.**

**WARDEN, ELLSWORTH
CORRECTIONAL FACILITY,**

      **Respondent.**

      **Case No. 2:19-cv-990
Judge Edmund A. Sargus
Magistrate Judge Kimberly A. Jolson**

**REPORT AND RECOMMENDATION**

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that this action be **DISMISSED.**

**I. BACKGROUND**

Petitioner challenges his convictions after a jury trial on charges of gross sexual imposition, kidnapping, and pandering sexually oriented material involving a minor. The trial court imposed a term of 106 years to life in prison. The Ohio Fifth District Court of Appeals affirmed that judgment, and the Ohio Supreme Court declined to accept jurisdiction of the appeal. Petitioner also unsuccessfully pursued state collateral relief. On March 15, 2019, Petitioner filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He asserts that: police violated *Miranda v. Arizona*, 384 U.S. 436 (1966), in obtaining his statements against him (claim one); he was denied his right to an impartial jury when the trial court refused to grant his request for a change of venue (claim two); he was denied the effective assistance of appellate counsel (claim three); and the evidence is constitutionally insufficient to sustain his convictions (claims four, five, and six).

Respondent argues that Petitioner procedurally defaulted these claims or that they fail on the merits.

The Ohio Fifth District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 1} Defendant-appellant Matthew D. Rausenberg appeals his convictions entered by the Delaware County Court of Common Pleas on forty-two counts, including gross sexual imposition, kidnapping and pandering sexually oriented material involving a minor.FN1 Plaintiff-appellee is the state of Ohio.
>
> FN1:  Appellant was also convicted of school zone specifications attendant to the charges.

STATEMENT OF THE FACTS AND CASE

> {¶ 2} On March 11, 2015, Detective Jason Campbell of the Delaware County Sheriff's Office received a referral from the Columbus Police Department relative to the sexual assault of a juvenile. Detective Campbell met with the juvenile on March 12, 2015.
>
> {¶ 3} The sixteen year-old female juvenile (Jane Doe 1) stated she had been sexually assaulted by her teacher while a student at Olentangy Arrowhead Elementary School in Delaware County, Ohio. Jane Doe 1 told the officers the conduct continued until 2010, as she moved through the third, fourth and fifth grades in the same school building. On at least one occasion, the teacher used a video camera to record the encounter. In March of 2015, Jane Doe 1 disclosed the abuse to a Young Life counselor, a mandatory reporter, who then contacted law enforcement.
>
> {¶ 4} At all times relevant, Appellant was a teacher at Olentangy Arrowhead Elementary School, where he taught for thirteen years, all but the last year as a second grade teacher. Jane Doe 1 alleged, while she was a student at Olentangy Arrowhead, Appellant would pull her into his classroom when no one else was present. He would ask her to sit on his lap, and read children's books. While reading, Appellant would rub her body. He would unzip his pants and his penis would be exposed. Jane Doe 1 could feel Appellant's penis when she sat on his lap on her back. Appellant caused Jane Doe 1 to feel his penis with her hands, and lifted up her shirt, exposing and fondling her breasts. Appellant would place his hands down her pants and rub/feel her vagina, skin to skin. Jane Doe 1 maintains she attempted to push his hands away or close her legs tight, but Appellant continued. Jane Doe 1 stated the incidents would cease when the classes in the building would change.

2

The incidents began in 2006, while she was in second grade, and continued through fifth grade in 2010. Appellant utilized a video camera to record the encounter on at least one occasion.

{¶ 5} Jane Doe 1 related an incident to investigating officers wherein, while she was in fifth grade, she took the camera utilized by Appellant from his classroom. She wrote him a note stating she "knew what he was doing is wrong," and she would report him to the police, if his behavior continued. Jane Doe 1 stated, after viewing the recordings on the camera, she recognized other juveniles who were current students at Olentangy Arrowhead Elementary.FN2 Jane Doe 1 told the officers Appellant continued to teach at Arrowhead Elementary.

FN2: Appellant retrieved the camera by visiting Jane Doe 1's sister at her school, and proceeding to Jane Doe 1's residence.

{¶ 6} On March 16, 2015, Detective Campbell presented a search warrant affidavit to a judge of the Delaware Municipal Court. Olentangy Arrowhead Elementary School, Appellant's place of employment, was the premises indicated in the warrant, specifically Appellant's classroom in the building. The search warrant affidavit averred Jane Doe 1 recognized other girls whom she recognized as attending the school, whom she recognized from seeing their faces on the recordings of Appellant sexually abusing the juveniles.

{¶ 7} Detective Jason Campbell averred in the search warrant affidavit,

Based on my knowledge, experience, and training in child sexual exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography,...

Based upon all of the foregoing, affiant believes and has probable cause to believe that the offenses described above, to wit: Rape, section 2907.02 of the Ohio Revised Code; Pandering Sexually Oriented Material Involving a Minor, section 2907.322 of the Ohio Revised Code; and Illegal Use of Minor in Nudity–Oriented Material or Performance, section 2907.323 of the Ohio Revised Code; Specifically, camera, camcorders, video recording devices, thumb drives, computers, laptops, and any other media or storage device which can hold, contain, capture and/or share media files; and any other evidence of said crimes may be located at 2385 Hollenback Road, Lewis Center, Delaware County, Ohio 43035, identified as Olentangy Arrowhead Elementary School.

(Emphasis added.)

{¶ 8} The judge of the Delaware Municipal Court granted the search warrant, which was executed on March 16, 2015. Upon arrival at the school, the officers found

3

Appellant in his classroom, after school hours, working. The officers explained they were executing a search warrant for his classroom. The officers then inquired of Appellant whether he would "like to sit down and talk" to which Appellant consented. During the search of the classroom, one IPhone 5s was located in Appellant's classroom, a polaroid camera, and one older IPhone 4. Appellant provided the passwords for both devices, and consented to the search of the devices.FN3

FN3: A more complete rendition of the facts and procedural history is set forth in our analysis and disposition of Appellant's assignments of error.

{¶ 9} The Delaware County Grand Jury indicted Appellant, in Case No. 15CRI030112, on thirty-two counts, including gross sexual imposition, kidnapping and pandering sexually oriented material involving a minor. On August 21, 2015, the State dismissed the original indictment, reindicting Appellant on the original charges and ten additional charges encompassing four new victims, in Case No. 15CRI080391.FN4

FN4: For purposes of the within appeal, we find a rendition of the underlying facts relative to the other four victims unnecessary for resolution of the appeal. Therefore, we have summarily included only the procedural posture relative to the indictment and reindictment herein.

{¶ 10} On November 9, 2015, the trial court conducted a hearing on Appellant's motions to suppress filed July 28, 2015, and July 30, 2015.

{¶ 11} Via Judgment Entry of November 12, 2015, the trial court denied Appellant's motions to suppress.

{¶ 12} The jury returned a verdict of guilty on all counts, except Count 42, on which the jury returned a verdict of not guilty. Appellant was also found guilty as to the school zone specifications.FN5 Via Judgment Entry on Verdicts entered January 26, 2016, the trial court entered judgment of convictions as found by the jury.

FN5: The sexual motivation specifications on Counts 38, 40 and 42 were dismissed prior to trial.

{¶ 13} Via Judgment Entry on Sentence entered January 28, 2016, the trial court sentenced Appellant to a total definite sentence of seventy-six years, consecutive to an indefinite sentence of thirty years to life.FN6 The trial court further designated Appellant a Tier III child victim offender, subject to lifetime registration.

FN6: Appellant has not assigned as error the sentence imposed by the trial court herein; therefore, for purposes of this appeal, we have summarily referred to the total sentence imposed.

4

{¶ 14} Appellant appeals, assigning as error:

I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT DENIED DEFENDANT/APPELLANT'S MOTION TO DISMISS THE INDICTMENT AS THE STATE VIOLATED DEFENDANT/APPELLANT'S STATUTORY AND CONSTITUTIONAL RIGHTS TO A TIMELY TRIAL.

II. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT DENIED DEFENDANT/APPELLANT'S MOTION TO SUPPRESS EVIDENCE OBTAINED IN VIOLATION OF HIS FIFTH AMENDMENT RIGHTS.

III. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT GRANTED A SEARCH WARRANT UPON IMPROPER AND STALE INFORMATION.

IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT/APPELLANT WHEN IT DENIED DEFENDANT/APPELLANT'S MOTION FOR A CHANGE OF VENUE.

*State v. Rausenberg*, 5th App. Dist. No. 16CAA020007, 2017 WL 1102781, at *1–3 (Ohio Ct. App. March 23, 2017). On March 23, 2017, the appellate court affirmed the trial court's judgment. *Id.* On December 20, 2017, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Rausenberg*, 151 Ohio St.3d 1473 (Ohio 2017).

On June 17, 2017, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (Doc. 4-1, PAGEID #: 386). The state appellate court overruled the motion except as to Petitioner's claim that the judgment was against the manifest weight and sufficiency of the evidence on four kidnapping convictions. *See State v. Rausenberg,* 5th Dist. No. 16CAA020007, 2018 WL 3612886, at *2 (Ohio Ct. App. July 26, 2018).[1] On July 26, 2018,

---

[1] Petitioner filed a timely appeal to the Ohio Supreme Court. (Doc. 4-1, PAGEID #: 421). On February 14, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Rausenberg*, 151 Ohio St.3d 1527 (Ohio 2018).

however, the appellate court overruled the sole assignment of error and affirmed the judgment of

the trial court. *Id*. Petitioner apparently did not file an appeal to the Ohio Supreme Court.

## II. STANDARD OF REVIEW

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective

Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court

determinations.  AEDPA is "a formidable barrier to federal habeas relief for prisoners whose

claims have been adjudicated in state court," and courts must not "lightly conclude that a State's

criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief

is the remedy." *Burt v. Titlow,* 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S.

86 (2011)).

"Under AEDPA, a writ of habeas corpus should be denied unless the state court decision

was contrary to, or involved an unreasonable application of, clearly established federal law as

determined by the Supreme Court, or based on an unreasonable determination of the facts in light

of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013)

(citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner

must show that the state court's decision was "contrary to, or involved an unreasonable application

of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state

court relied on an "unreasonable determination of the facts in light of the evidence presented in

the State court proceeding").

The United States Court of Appeals for the Sixth Circuit has explained these standards as

follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state
> court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
> question of law[,]" or (2) "the state court confronts facts that are materially
> indistinguishable from a relevant Supreme Court precedent and arrives" at a

6

different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular ... case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley*, 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, ... [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (citation and quotations omitted). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009). Relatedly, in evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

## III. DISCUSSION

Respondent argues that the Petition should be denied because (1) Petitioner procedurally defaulted claims four, five, and six and (2) Petitioner's remaining claims fail on the merits. The Undersigned addresses each of these arguments in turn.

## A. Procedural Default

In claims four, five, and six, Petitioner asserts that the evidence is constitutionally insufficient to support his convictions. (Doc. 1, PAGEID #: 10, 14, 16). The Undersigned finds that Petitioner has procedurally defaulted these claims.

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If the prisoner fails to do so, but still has an avenue open to present the claims, then the petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State may have a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly

8

presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that, if the claims are not presented to the state courts in the way in which state law requires, and consequently, the state courts do not decide the claims on their merits, neither may a federal court. *See Wainwright v. Sykes,* 433 U.S. 72, 87 (1977) (holding that "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case—that is, they are "procedurally defaulted").

To determine whether a habeas petitioner has procedurally defaulted a claim, courts consider whether: (1) the petitioner failed to comply with a state procedural rule; (2) the state courts enforce that rule; (3) the rule is an adequate and independent state ground for denying review of a petitioner's federal constitutional claim; and (4) the petitioner can show cause and prejudice excusing the default. *Williams v. Burt*, 949 F.3d 966, 972–73 (6th Cir. 2020) (citing *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (en banc)).

      *1. Absent a showing of cause and prejudice, Ohio's doctrine of* res judicata *bars this Court's consideration of claims four, five, and six.*

Here, in claims four, five, and six, Petitioner raises three insufficiency of the evidence arguments, none of which were raised on direct appeal. (*Compare* Doc. 1, PAGEID #: 10, 14–17) *with Rausenberg*, 2017 WL 1102781, at *3 (quoting Petitioner's assignment of errors on direct appeal).[2] But Ohio's *res judicata* rule requires a petitioner to raise claims apparent on the face of

---

[2] In state court, Petitioner filed a Rule 26(B) Application to Reopen based on appellate counsel's alleged ineffective assistance for, among other things, failing to raise certain insufficiency of the evidence arguments. (*See* Doc. 4-1, PAGEID #: 390–93). That does not preserve those sufficiency of the evidence claims for purposes of federal habeas review. *See Wogenstahl v. Mitchell*, 668 F.3d 307, 338 (6th Cir. 2012) (citing *Lott v. Coyle*, 261 F.3d 594, 612 (6th Cir. 2001)) (holding that Rule 26(B) "motions are vehicles designed exclusively for raising claims alleging" ineffective assistance of appellate counsel and that such "motions preserve[] for habeas review only … IAAC arguments, not the underlying substantive arguments"); *Somers v. Warden, Noble Corr. Inst.*, No. 2:19-CV-5633, 2020 WL 1154545, at *3 (S.D. Ohio Mar. 10, 2020) ("Presentation of a claim as an omitted assignment of error in a

the record on direct appeal.  *State v. Cole*, 2 Ohio St.3d 112, 115 (1982); *State v. Perry*, 10 Ohio St.2d 175, 180 (1967).  And the Sixth Circuit has concluded that rule is consistently enforced and constitutes an adequate and independent state ground "foreclosing review in subsequent federal habeas proceedings." *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citing *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000)).  Because Petitioner failed to comply with that rule and did not raise claims four, five, and six in his direct appeal, he has waived these claims for federal habeas corpus review absent a showing of cause and prejudice.

> 2. *Plaintiff has failed to demonstrate cause and prejudice excusing his procedural default.*

Petitioner has not, and cannot, demonstrate cause and prejudice here.  First, Petitioner does not address Respondent's procedural default argument.  (*See generally* Doc. 17).  Nor does he make a cause and prejudice argument.  (*See generally id.*).  That is a problem.  *See Pinholster*, 563 U.S. at 181 (holding that the burden of satisfying the standards set forth in § 2254 rests with the petitioner); *Hinkle v. Randle*, 271 F.3d 239, 245 (6th Cir. 2001) (citing *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999)) (internal citation omitted) ("[P]etitioner bears the burden of showing cause and prejudice to overcome a procedural default.").  Because Petitioner has failed to make, let alone develop, such an argument he has waived it and failed to meet his burden as a result.  *See Abdulsalaam v. Franklin Cty. Bd. of Comm'rs*, 637 F. Supp. 2d 561, 576 (S.D. Ohio 2009), *aff'd*, 399 F. App'x 62 (6th Cir. 2010) (collecting cases) (holding that undeveloped arguments are waived).

---

Rule 26(B) Application does not preserve that claim for merits review in federal habeas corpus.").  Moreover, the insufficiency of the evidence arguments raised in his Rule 26(B) Application to Reopen are distinct from those raised here.  (*Compare* Doc. 1 at 10, 14–17 with Doc. 4-1, PAGEID #: 390–93).  Even if Petitioner could have preserved his insufficiency of the evidence arguments in his Rule 26(B) Application, he failed to present "'the same claim under the same theory' to the state courts before raising it on federal habeas review," *Hicks*, 377 F.3d at 552–53 (quoting *Pillette*, 824 F.2d at 497).

Second, even if Petitioner had made such a cause and prejudice argument, the result would be the same.  The only possible ground for cause that the Undersigned can see is an ineffective assistance of appellate counsel argument based on appellate counsel's decision not to appeal Petitioner's conviction based on the arguments in claims four, five, and six.  Although ineffective assistance of appellate counsel may constitute cause to excuse a procedural default, such a claim "generally must 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'"  *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (quoting *Murray v. Carrier*, 477 U.S. 478, 490–492 (1986)).  Petitioner failed to comply with that requirement here.  (*Compare* Doc. 4-1, PAGEID #: 390–93 (raising a general ineffective assistance of appellate counsel argument based on appellate counsel's decision not to appeal all of Petitioner's convictions on sufficiency of the evidence grounds and, specifically, for failing to challenge Petitioner's kidnapping convictions on the ground that the victims did not suffer any physical harm) with Doc. 1, PAGEID #: 8, 10, 14, 16; Doc. 17, PAGEID #: 2443–48 (asserting ineffective assistance of counsel based on different claims, namely, the failure to raise the sufficiency of the evidence arguments presented in claims four, five, and six)).  Because Petitioner failed to raise "the same claim under the same theory to the state courts before raising it on federal habeas review," *Hicks*, 377 F.3d at 552–53 (citation and quotations omitted), he procedurally defaulted that claim of ineffective assistance of counsel.  He cannot use that claim to excuse his procedural default of claims four, five, and six as a result.  *See Edwards*, 529 U.S. at 452.

> 3.  *Petitioner does not argue for, and the record does not support, the application of the actual innocence exception.*

A claim of actual innocence may be raised "to avoid a procedural bar to the consideration of the merits of [the petitioner's] constitutional claims."  *Schlup v. Delo*, 513 U.S. 298, 326–27

(1995).  Petitioner does not argue that this exception applies to him, and nothing in the record suggests that it does.  Petitioner has procedurally defaulted claims four, five, and six as a result.

### B.  Remaining Claims

That leaves three claims for the Undersigned to address on the merits.

#### 1.  *Claim One* – Miranda *violation*

In claim one, Petitioner asserts that the police violated his *Miranda* rights when they questioned him at school during the execution of a search warrant.  (Doc. 1, PAGEID #: 5; Doc. 17, PAGEID #: 2415–41).  According to him, the state appellate court improperly failed to consider the totality of circumstances when it determined that the evidence did not indicate that he was "in custody" such that *Miranda* applied.  (Doc. 17, PAGEID #: 2422–36).  He complains that the state appellate court failed to consider facts indicating that the police isolated him from his coworkers and friends for two hours, confined him in a closed room, prevented him from leaving without an escort, made it clear that he would not be released until they searched his home a second time, acted aggressively towards him, seized his cell phone, and arrested him at conclusion of the interview.  (*Id.*).  These facts, Petitioner argues, show that he was in custody when police questioned him.  Petitioner also challenges the admission of video recordings police obtained from his iPhone 4 by using the passcode he provided on this basis.  (*Id.*, PAGEID #: 2439–41).

The Fifth Amendment provides bedrock protections against government overreach.  It states that no individual "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.  The Fifth Amendment requires that an individual subject to custodial interrogation be informed clearly and unequivocally: (1) that he "has the right to remain silent"; (2) that "anything said can and will be used against the individual in court"; and (3) that "he has the right to consult with a lawyer and to have the lawyer with him during interrogation;" and (4)

"that if he is indigent[,] a lawyer will be appointed to represent him." *Miranda*, 384 U.S. at 567–

73.  These warnings form "an absolute prerequisite to interrogation." *Id.* at 471.

"[C]ustody must be determined based on how a reasonable person in the suspect's situation

would perceive his circumstances." *Yarborough v. Alvarado*, 541 U.S. 652, 662 (2004).  In

making this determination, a reviewing court conducts two "discrete inquiries":

> [F]irst, what were the circumstances surrounding the interrogation; and second,
> given those circumstances, would a reasonable person have felt he or she was not
> at liberty to terminate the interrogation and leave.  Once the scene is set and the
> players' lines and actions are reconstructed, the court must apply an objective test
> to resolve the ultimate inquiry:  was there a formal arrest or restraint on freedom of
> movement of the degree associated with a formal arrest.

*Thompson v. Keohane*, 516 U.S. 99, 112 (1995) (internal citation, quotations, and alterations

omitted).  "Several factors guide the inquiry: the location of the interview; the length and manner

of questioning; whether the individual possessed unrestrained freedom of movement during the

interview; and whether the individual was told she need not answer the questions." *United States

v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009) (citing *United States v. Swanson*, 341 F.3d 524, 529

(6th Cir. 2003)).

Here, the state appellate court concluded that Petitioner was not in custody for purposes of

*Miranda* during his questioning by law enforcement.  *Rausenberg*, 2017 WL 1102781, at *6–7.

That was not an unreasonable application of clearly established federal law.

First, a reasonable jurist could conclude that the location of the interview weighs against a

finding that Petitioner was in custody for purposes of *Miranda*.  After obtaining a search warrant

to search Petitioner's home and classroom, law enforcement officers met Petitioner in his

classroom after school.  (Doc. 4-1, PAGEID # 707–08).  Petitioner accompanied them to a

conference room adjacent to the main office.  The conference room contained a large table with

eight to ten chairs around it.  (*Id.*, PAGEID #: 713).  "The place of the questioning in the present

case is substantially less hostile or coercive than in other cases in which this court or the Supreme Court has held that a detainee was not entitled to a *Miranda* warning."  *Swanson*, 341 F.3d at 529 (collecting cases in which individuals were questioned at police stations and found not be in custody for purposes of *Miranda*).

Second, a reasonable jurist could conclude that the fact that Petitioner was told he need not answer the questions weighs against a finding that he was in custody for purposes of *Miranda*. Police advised Petitioner that the interview was voluntary, (PAGEID # 717), and told Petitioner that he was free to leave and that he did not need to speak with them, (PAGEID #: 748).  *Cf. Swanson*, 341 F.3d at 530 ("Most important to our analysis, though, is that Swanson was explicitly told by Fleming that he was not under arrest and that he did not have so speak with him if he did not choose to.").

Third, a reasonable jurist could conclude that Petitioner's freedom of movement weighs against a finding that he was in custody for purposes of *Miranda*.  Although law enforcement officers explained that he could not return to the classroom while a search warrant was being executed, (Doc. 4-1, PAGEID #: 719–20), they told him that he was free to leave, (*id.*, PAGEID #: 748); did not block his access to the door to the conference room, (*id.*, PAGEID #: 714), and did not handcuff or restrain him in any way, (*id.*, PAGEID #: 716).  *Cf. Panak*, 552 F.3d at 467 (collecting cases) (concluding that an individual was not in custody, in part, because, "[d]uring the interview, the officers did not handcuff Panak or physically restrain her, and they did not otherwise limit her freedom of movement.").

Fourth, a reasonable jurist could conclude that the length and manner of questioning weighs against a finding that Petitioner was in custody for purposes of *Miranda*.  Petitioner was questioned for approximately two hours.  (Doc. 4-1, PAGEID #: 708, 761).  By itself, a two-hour period of

14

questioning is not suggestive of custodial interrogation.  *See Mason v. Mitchell*, 320 F.3d 604, 631–32 (6th Cir. 2003) (holding that, under AEDPA deference, no custodial interrogation occurred during interview that lasted "almost four hours").  While law enforcement officers questioned Petitioner regarding "the nature of his interactions with certain students, his Internet search history, [] questions regarding his personal and family life," allegations of misconduct, and Petitioner's truthfulness, (Doc. 17, PAGEID #: 2430–33), there is no suggestion that law enforcement officers raised their voice or brandished firearms or handcuffs.  *Cf. Panak*, 552 F.3d at 467 (citation omitted) (concluding that individual was not in custody, in part, because during questioning, "[n]obody raised his voice, and the investigators did not possess, much less brandish, firearms or handcuffs").

In view of the foregoing, Petitioner has failed to establish that the state court unreasonably applied clearly established federal law in determining that he was not in custody at the time of questioning by law enforcement.  Claim one is, therefore, without merit.

### 2.  *Claim Two – Fair and Impartial Jury*

In claim two, Petitioner asserts that the state trial court's refusal to grant his request for a change of venue based on pre-trial publicity denied him a fair trial.  (Doc. 1, PAGEID #: 7).  Petitioner argues that the state trial court conducted an inadequate *voir dire* to determine whether potential jurors were, in fact, impartial.  (*Id.*; Doc. 17, PAGEID #: 2441–43).  Specifically, he complains that the state trial court failed to question each potential juror as to the nature and extent of their exposure to pre-trial publicity regarding the case.  (Doc. 17, PAGEID #: 2442–43).  He further asserts that the state appellate court unreasonably applied federal law when it failed to address the state trial court's inadequate *voir dire*.  (*Id.*, PAGEID #: 2443).

A defendant's request for a change of venue should be granted where prejudicial pretrial publicity jeopardizes the defendant's right to a fair trial by an impartial jury. *Irwin v. Dowd*, 366 U.S. 717, 722–24 (1961). "Prejudice resulting from pretrial publicity can be presumptive or actual." *Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007) (citing *Nevers v. Killinger*, 169 F.3d 352, 362 (6th Cir. 1999), *abrogated on other grounds*, *Harris v. Stovall*, 212 F.3d 940, 942–43 (6th Cir. 2000)).

In the absence of presumed prejudice, a trial court should confront the fact of the publicity and determine if it rises to the level of actual prejudice by conducting a "searching voir dire." *Ritchie v. Rogers*, 313 F.3d 948, 962 (6th Cir. 2002). Significantly, jurors need not be "totally ignorant of the facts and issues involved." *Irvin*, 366 U.S. at 722.

> In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression of opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based upon the evidence presented in court.

*Id.* at 722–23. Thus, a juror's "mere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and of itself raise a presumption of jury taint[.]" *Campbell v. Bradshaw*, 674 F.3d 578, 594 (6th Cir. 2012) (citation and quotations omitted). Rather, "[t]he relevant question is did the juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed." *Id.* (citation, quotations, and alteration omitted).

16

"No hard-and-fast formula dictates the necessary depth or breadth of *voir dire*."  *Skilling v. United States*, 561 U.S. 358, 386 (2010) (citing *United States v. Wood*, 299 U.S. 123, 145–46 (1936)); *see also Morgan v. Illinois*, 504 U.S. 719, 729 (1997) ("The Constitution . . . does not dictate a catechism for *voir dire*, but only that the defendant be afforded an impartial jury.").  So a trial court is granted wide discretion in conducting *voir dire*.  *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991).

Here, the state appellate court concluded that the trial court did not err in empaneling a fair and impartial jury.  *Rausenberg*, 2017 WL 1102781, at *10–11.  That was not an unreasonable application of clearly established federal law.

Petitioner's claim of actual prejudice fails for two reasons.[3]  First, beyond citing the general standard regarding the right to a fair trial by an impartial jury, (*see* Doc. 17, PAGEID #: 2441–43), Petitioner has not identified any clearly established federal law that the state appellate court applied unreasonably.  *Cf. Pinholster*, 563 U.S. at 181 (holding that the burden of satisfying the standards set forth in § 2254 rests with the petitioner)

Second, and more importantly, the record shows that the state trial court conducted a constitutionally adequate *voir dire*.  The state trial court advised potential jurors regarding the purpose of *voir dire*—to ensure that the defendant obtained a fair and impartial jury.  (Doc. 4-1, PAGEID #: 825).  It individually questioned each person who indicated that they had heard about the case as to the nature and extent of their pretrial exposure.  And it explicitly questioned each one regarding their ability to set aside any information they had heard and decide the case solely on the facts and legal instructions provided in court.  (*Id.*, PAGEID #: 833–50).  Further, the state trial court individually questioned each person who indicated that they had already formed or

---

[3] Petitioner does not allege, and the record does not reflect, a pervasive circus-like atmosphere supporting a presumption of prejudice.

expressed an opinion of guilt.  (*Id.*, PAGEID #: 849–54).  The parties also had the opportunity to inquire each of the potential jurors regarding potential bias.  (*Id.*, PAGEID # 883–962).

Ultimately, the trial court removed each of the jurors who indicated that they could not be impartial.  *Rausenberg*, 2017 WL 1102781, at *10.  Seven jurors who indicated that they had previously heard or read something about the case each confirmed that they had no bias against the Petitioner and that would be serve fair and impartially.  *Id.*  The remainder of the jurors seated did not indicate that they had previously heard or read anything about the case and confirmed their ability to be fair and impartial or did not indicate any bias when questioned during *voir dire*.  *Id.*

Did the empaneled jurors swear that they could set aside any opinion they might hold and decide Petitioner's case on the evidence, and should their protestations of impartiality have been believed?  On the record before the Court, yes.  And, "[n]otably, [Petitioner] has not identified any juror who was actually seated that indicated an inability to set aside any prior knowledge about the case or to judge the case fairly and impartially."  *Campbell*, 674 F.3d at 594 (citation omitted).  Given trial courts' wide discretion in conducting *voir dire*, *Mu'Min*, 500 U.S. at 427, the state appellate court did not unreasonably apply clearly established federal law here.  Claim two, therefore, lacks merit.

### 3. Claim Three – Ineffective Assistance of Appeal Counsel

Petitioner alleges that his counsel on his direct appeal rendered ineffective assistance because he did not raise claims of: (1) ineffective assistance of trial counsel for failing to object to the prosecutor playing out-of-context excerpts of Petitioner's recorded interview; (2) insufficient evidence on the individual counts for which Petitioner was convicted;[4] and (3) erroneous admission of other acts evidence that did not comply with Ohio law.  (Doc. 1, PAGEID #: 8).

---

[4] The Undersigned has already concluded that Petitioner procedurally defaulted any ineffective assistance of appellate counsel argument related to claims four, five, and six.  *See supra* Section III.A.2.

18

Here, the state appellate court concluded that Petitioner's appellate counsel did not render ineffective assistance of counsel related to any of the claims at issue here.  (Doc. 4-1, PAGEID #: 512–20).  That was not an unreasonable application of clearly established federal law.

The United States Supreme Court has cautioned federal habeas courts to "guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." *Harrington v. Richter*, 562 U.S. 86, 105 (2011).  The Court observed that while "[s]urmounting *Strickland's* high bar is never … easy[,] … [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is even more difficult." *Id.* (citations and quotations omitted).  The Court instructed that the standards created under *Strickland* and § 2254(d) are both "highly deferential, and when the two apply in tandem, review is doubly so." *Id*. (citations and quotations omitted).  Thus, when a federal habeas court reviews a state court's determination regarding an ineffective assistance of counsel claim, "[t]he question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id*.

Applying this deferential standard of review, Petitioner has failed to establish that relief is warranted.  Indeed, beyond relying on his arguments related to claims four, five, and six, Petitioner does not develop his ineffective assistance of counsel argument.  (*See* Doc. 17, PAGEID #: 2443–44).  It is not this Court's function to scour the record in search of evidence supporting Petitioner's claim. *See Bethel v. Bobby*, No. 2:10-cv-391, 2019 WL 2170682, at *7 (S.D. Ohio May 20, 2019) (citation omitted).  And because Petitioner has failed to develop his argument, he has waived it, *Abdulsalaam*, 637 F. Supp. 2d at 576, and failed to meet his burden as a result.  Claim three is, therefore, without merit.

19

## IV.  RECOMMENDED DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date:  April 21, 2020                          /s/ Kimberly A. Jolson
                                               KIMBERLY A. JOLSON
                                               UNITED STATES MAGISTRATE JUDGE