IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MATTHEW RAUSENBERG,

        Petitioner,

    v.

WARDEN, ELLSWORTH
CORRECTIONAL FACILITY,

        Respondent.

CASE NO. 2:19-CV-990
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

On April 21, 2020, the Magistrate Judge issued a Report and Recommendation recommending that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be dismissed.  (ECF No. 22.)  Petitioner has filed an Objection to the Magistrate Judge's Report and Recommendation.  (ECF No. 27.)  Pursuant to 28 U.S.C. § 636(b), this Court has conducted a de novo review.  For the reasons that follow, Petitioner's Objection (ECF No. 27) is **OVERRULED.**  The Report and Recommendation (ECF No. 22) is **ADOPTED** and **AFFIRMED**.  Petitioner's request for oral argument is **DENIED.**  This action is hereby **DISMISSED**.

The Court **DECLINES** to issue a certificate of appealability.

Petitioner challenges his convictions after a jury trial in the Delaware County Court of Common Pleas on charges of gross sexual imposition, kidnapping, and pandering sexually oriented material involving a minor.  He asserts that police violated *Miranda v. Arizona*, 384 U.S. 4376 (1966) (claim one); that he was denied an impartial jury because the trial court refused to grant his request for a change of venue (claim two); that he was denied the effective assistance of appellate counsel (claim three); and that the evidence is constitutionally insufficient to sustain

his convictions (claim four, five, and six).  The Magistrate Judge recommended dismissal of the foregoing claims as procedurally defaulted or without merit.

Petitioner objects to the recommendation of dismissal of his convictions as unconstitutionally obtained in violation of *Miranda*; he does not otherwise object to the recommendations of the Magistrate Judge.  Petitioner again argues that the state appellate court unreasonably applied federal law by failing to consider the totality of the circumstances when making the determination that he was not "in custody" such that police needed to provide him with the required warnings under *Miranda*.  He complains that the Magistrate Judge failed properly to address this issue.  He again raises all of the same arguments he previously presented in this regard.  He further maintains that the audio recording of his interview will show that police testimony at the hearing on his motion to suppress was inaccurate and that state appellate court made incorrect factual findings in rejecting this claim.

This Court has reviewed the entire record, including the audio tape of Petitioner's interview with police.  It indicates that Petitioner readily agreed to walk with police to the conference room off of the main office of the school where he worked and voluntarily agreed to speak with them there while they executed the search warrant of his classroom.  He readily gave them the passcodes to access the data on his cellular phones.  Police did not act aggressively or coercively towards him.  They did not handcuff or otherwise restrain him.  They repeatedly informed him that he was not under arrest and was free to leave.  At times during the audio taped interview, other voices, presumably employees in the school's office, can be heard in the background talking and laughing.   Police told the Petitioner that the nature of the allegations that had been made against him and told him that he could return to his house.  He could drive himself home or ride with them if he preferred but could not go inside his home or inside of his

2

classroom until the search had concluded.  They did not raise their voices.  At one point, Petitioner gave them permission to search his car and walked outside to assist in that process.  When Petitioner asked what would be happening, police told him that it would depend on what they found.  An accusation had been made of him recording sexual abuse of children in his class.  If they found evidence of that, they would probably want to sit down and talk a little longer.  So long as they found nothing on his cellular phones, they would return the phones to him.  If they found something questionable, they would take the property and give him a receipt but he would get it back.  If they did not find anything, he was pretty good to go, but if they did they would have to deal with it accordingly.  The record does not support Petitioner's argument that police isolated him, acted aggressively, or seized his phones so as to render him incommunicado.  Petitioner could have walked into the adjoining office at any time of his own accord.  He chose not to do so.  The audio recording of Petitioner's interview with police supports the factual findings of the state trial court[1] and state appellate court.  Petitioner has failed to rebut the

---

[1] The state trial court made the following relevant findings of fact:

> The room held a table and eight to ten chairs, and [Petitioner] was given a seat near one of the two doors to the room.  Windows in the room looked out over a parking lot at the school and Campbell recalls some light from outside coming through the windows during the ensuing interview.  The doors to the room were closed during the interview, though the defendant's ability to stand and exit the room was not restricted.
>
> Campbell and his colleagues were wearing suits and ties that day rather than law-enforcement uniforms.  They were armed, though their firearms remained holstered and hidden from view under their suits throughout their contact with the defendant that day.  No one displayed any weapons or handcuffs during the interview, and the officers did not employ any other restraints that might have limited the defendant's freedom of movement.  Campbell did tell the defendant, though, that some other officers were searching the defendant's classroom during the conference-room interview, and Campbell said that the defendant could not return to his classroom until that search was finished.
>
> At the start of their conversation in the conference room at the school, one of the officers stated to the defendant that the defendant was "not under arrest" and that he was "not going to be arrested today."  That same detective stated at the same time – roughly 4:15 p.m.—that the defendant would be "voluntarily speaking" with the officers. Throughout the ensuring conversation – which lasted off-and-on for the next two hours – the officers did not make any threats, offered no promises, and did not deprive the defendant of water or nourishment.  At one point during the

3

presumption of correctness of the state courts' factual findings. In short, the record also does not indicate that the state appellate court failed to consider the totality of the circumstances or unreasonably determined that those circumstances did not reflect that Petitioner was in custody so as to prevent the admission of incriminating evidence obtained prior to issuance of *Miranda* warnings. The record does not indicate that the appellate court failed to consider the totality of the circumstances or that it contravened or unreasonably applied federal law, or based its decision on an unreasonable determination of the facts in light of the evidence presented, such that federal habeas corpus relief is warranted. 28 U.S.C. § 2254(d).

For the foregoing reasons and for the reasons addressed in the Magistrate Judge's Report and Recommendation, Petitioner's Objection (ECF No. 27) is **OVERRULED.** The Report and

---

interview, one of the detectives reiterated that the defendant was "not under arrest." Campbell at another point during the interview said "you're free to go any time," and another detective soon thereafter stated again "you're not under arrest" and "you're going home."

The defendant – who told the detectives that he holds a master's degree in literacy education – was alert throughout the interview, and he appeared to be able to understand the officers' questions and to communicate his responses to their questions with no difficulty. He responded promptly and coherently to the officers' questions during the interview, and he did not appear to be under the influence of any drugs or alcohol that afternoon.

During the interview, the detectives in the conference room learned that their colleagues who were executing the search warrant in the nearby classroom had found a second cellular phone there. Campbell then asked the defendant if that phone required a password to unlock it as the first one had, and the defendant readily divulged that second phone's password to the officers.

\*\*\*

At one point during the March 16, 2015 conference-room interview, one of the officers stated that he wanted to search the defendant's vehicle to ensure that there were no weapons stored there. The defendant agreed to that search, and the defendant and a detective left the conference room, spent a few minutes at the defendant's car in the parking lot, and then returned to the conference room.

During the conference-room discussion with the officers, the defendant never tried to stop the interview, never refused to answer the officers' questions, and did not ask to speak with an attorney at any time.

At the end of the interview, Campbell placed the defendant under arrest and advised the defendant about his Miranda rights.

(*Judgment Entry,* ECF No. 4, PAGEID # 194-96.)

4

Recommendation (ECF No. 22) is **ADOPTED** and **AFFIRMED**. Petitioner's request for oral argument is **DENIED**. This action is hereby **DISMISSED**.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court now considers whether to issue a certificate of appealability. "In contrast to an ordinary civil litigant, a state prisoner who seeks a writ of habeas corpus in federal court holds no automatic right to appeal from an adverse decision by a district court." *Jordan v. Fisher*, —U.S. —. —, 135 S.Ct. 2647, 2650 (2015); 28 U.S.C. § 2253(c)(1) (requiring a habeas petitioner to obtain a certificate of appealability in order to appeal).

When a claim has been denied on the merits, a certificate of appealability may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, n.4 (1983)). When a claim has been denied on procedural grounds, a certificate of appealability may issue if the petitioner establishes that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id*.

The Court is not persuaded that reasonable jurists would debate the dismissal of Petitioner's claim. The Court therefore **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED**.

<u>**s/Edmund A. Sargus, Jr. 12/16/2020**</u>
**EDMUND A. SARGUS, JR.**
**UNITED STATES DISTRICT JUDGE**